| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>In re                                                      :<br>                                                          :<br>EDDIE A. CORYAT,                       :<br>                                                          :<br>                                       Debtor.     :<br>------------------------------------------------------X | **Presentment Date and Time**:<br>October 11, 2019, at 12:00 p.m.<br><br>**Objection Deadline**:<br>October 8, 2019 at 5:00 p.m.<br><br><br>Case No.   18-10342-cgm<br><br>Chapter 13 |

**NOTICE OF PRESENTMENT OF ORDER APPROVING LOAN MODIFICATION AGREEMENT AND OPPORTUNITY FOR HEARING**

      **PLEASE TAKE NOTICE** that upon the annexed motion of Eddie A. Coryat (the "Debtor"), the undersigned will present the attached proposed order to the Honorable Chief Judge Cecilia G. Morris, United States Bankruptcy Judge, One Bowing Green, New York, New York 10004, for signature on October 11, 2019, at 12:00 noon.

      **PLEASE TAKE FURTHER NOTICE** that unless a written objection to the proposed order, with proof of service, is filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers at least three days before the date of presentment, there will not be a hearing and the order may be signed.

      **PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court will notify the moving and objecting parties of the date and time of the hearing and of the moving party's obligation to notify all other parties entitled to receive notice. The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

      **PLEASE TAKE FURTHER NOTICE** that the ECF docket number to which the filing relates shall be included in the upper right hand corner of the caption of all objections.

Dated: September 16, 2019
       Astoria, New York

                                                                           */s/Norma Ortiz*
                                                                           Norma E. Ortiz
                                                                           Ortiz & Ortiz, L.L.P.
                                                                           32-72 Steinway Street, Ste. 402
                                                                           Astoria, NY  11103
                                                                           Tel. (718) 522-1117
                                                                           *Debtor's Counsel*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re                                                   :
                                                        :
                                                        :
EDDIE A. CORYAT,                                        :
                                                        :        Case No.   18-10342-cgm
                                                        :
                      Debtor.                           :        Chapter 13
---------------------------------------------------------X

## MOTION FOR AN ORDER APPROVING LOAN MODIFICATION AGREEMENT WITH HSBC BANK USA

Eddie A. Coryat ("Debtor"), by and through his attorneys Ortiz & Ortiz, LLP., hereby move this court for an order approving an agreement to modify the first mortgage loan from HSBC Bank USA (the "Lender"), which holds a secured claim on the Debtor's property located at 104 West 118 Street, New York, NY 10026 (the "Home"). In support thereof, the Debtor states as follows:

### Background

1. The Debtor filed a Chapter 13 petition on February 9, 2019 (the "Filing Date").

2. By order dated August 7, 2018, the Court granted the Debtor's application to enter into loss mitigation with the Lender.

3. After having fully performed under a trial payment plan, the Debtor received a fully executed final loan modification agreement from the Lender on September 11, 2019. A copy of the agreement is annexed as Exhibit A to the annexed proposed order.

4. The essential terms of the agreement are:

    Unpaid Principal Balance as of July 11, 2019:     $933,579.20

    Deferred Principal Balance:                       $23,000

|  |  |
|---|---|
| Mortgage Payments, incl. escrow: | $5,427 – $5,984 |
| Interest rate: | 2.00 – 3.875% |
| Monthly principal and interest payment: | No less than $6,368.15 |
| New Maturity Date: | Dec. 1, 2035 |

5. The Debtor has reviewed, accepted and signed the terms of the agreement. The Debtor believes he has sufficient income to meet the terms of the agreement, and has been able to make the proposed payments. The Debtor shall use his rental income and wages to meet the terms of the agreement.

### Relief Requested

6. The Debtor requests that the Court enter the annexed order approving the agreement, in accordance with the Loss Mitigation Program and Procedures as adopted by the Court pursuant to Local Rule 9010-2 and General Order 451. The agreement will permit the Debtor to save his home and comply with the terms of his proposed plan. The Debtor submits that it is in his interests and the interests of his creditors that the Court approve the agreement.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order approving the agreement, and grant such other and further relief as the Court deems proper.

Dated: New York, New York
Sept. 16, 2019

*S/ Norma Ortiz*
Norma E. Ortiz, Esq.
Ortiz & Ortiz, L.L.P.
32-72 Steinway Street
Astoria, New York 11104
Tel. No. (718) 522-1117
Debtor's Counsel

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re                                           :
                                                :
                                                :
EDDIE A. CORYAT,                                :
                                                :         Case No.  18-10342-cgm
                                                :
                    Debtor.                     :         Chapter 13
-------------------------------------------------------X

## ORDER APPROVING LOAN MODIFICATION AGREEMENT

Eddie A. Coryat (the "Debtor") having moved this Court pursuant to the Loss Mitigation Program and Procedures as adopted by the Court pursuant to Local Rule 9010-2 and General Order 451 for an order approving a loan modification agreement dated June 26, 2019 (the "Motion"), attached hereto as Exhibit "A," modifying the first mortgage held by HSBC Bank USA against the Debtor's residence located at 104 West 118 Street, New York, NY  10026 ; and all creditors, the Chapter 13 trustee, and all parties who have filed a notice of appearance in the case having been given proper notice; and no objections having been filed, and it appearing that said loan modification is proper and in the best interest of the Debtor and the estate,

NOW, on Motion of the Debtor, it is hereby

ORDERED, that the Debtor, is authorized to enter into the loan modification agreement annexed hereto as Exhibit "A".

Dated: _____, 2019

                                                                                                                                              _____
                                                                                                                                               Cecilia G. Morris
                                                                                                                                               Chief U.S. Bankruptcy Judge

**EXHIBIT A**

**After Recording Return To:**
TIAA, FSB dba TIAA Bank, f/k/a EverBank
Attn: Loss Mitigation Closing CC318
301 W. Bay Street
Jacksonville, FL 32202

Prepared by: Marina Marjanovic
301 W. Bay Street, Jacksonville, FL 32202

_____ [Space Above This Line For Recording Data] _____

# LOAN MODIFICATION AGREEMENT

<u>Client</u> ("I"):[1]  **EDDIE A. CORYAT**, *whose address is 104 West 118th Street, New York, NEW YORK 10026*
<u>Lender</u> ("Lender"): **HSBC BANK USA**, *whose address is 452 Fifth Avenue, New York, NY 10016*
<u>Original Lender</u> ("Original Lender"): **Mortgage Electronic Registration Systems, Inc.**, *whose address is 1901 E. Voorhees Street, Suite C, Danville, Il 61834, as Nominee for* **Opteum Financial Services, LLC dba Homestar Direct**, *whose address is W115 Century Road, Paramus, NEW JERSEY 07652*
<u>Loan Number</u>: **9000415115**

This Loan Modification Agreement ("Agreement"), made this <u>June 26, 2019</u>, between **EDDIE A. CORYAT** ("Client"), *whose address is 104 West 118th Street, New York, NEW YORK 10026* and **HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTEUM MORTGAGE ACCEPTANCE CORPORATION, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-5** ("Lender"), *whose address is 452 Fifth Avenue, New York, NY 10016*, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated <u>August 26, 2005</u> to Mortgage Electronic Registration Systems, Inc., *whose address is 1901 E. Voorhees Street, Suite C, Danville, Il 61834*, as Nominee for Opteum Financial Services, LLC dba Homestar Direct, *whose address is W115 Century Road, Paramus, NEW JERSEY 07652* ("Original Lender"), recorded <u>April 20, 2006</u> as City Register File No. (CRFN): 2006000221118, in the amount of $650,000.00. Therafter assigned to **HSBC AS TRUSTEE FOR OMAC 2005-5**, *whose address is 1105 North Market Street, Wilmington DE 19801*, dated <u>June 29, 2009</u>, recorded <u>July 14, 2009</u> as City Register File No. (CRFN): 2009000214798. Thereafter assigned to **HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR OPTEUM MORTGAGE ACCEPTANCE CORPORATION, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-5**, *whose address is 452 Fifth Avenue, New York, NY 10016*, dated <u>June 29, 2012</u>, recorded on <u>October 2, 2012</u> as City Register File No. (CRFN): 2012000391691. *The foregoing Assignment of Mortgage was executed to correct and replace the Assignment of Mortgage recorded on July 14, 2009 (City Register File No. (CRFN): 2009000214798)*; all of which are recorded in the Records of New York County, NY. and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at **104 West 118th Street, New York, NEW YORK 10026**.

The present unpaid principal balance of this mortgage prior to this instrument is: **$ 710,432.15**
The additional amount secured by this instrument is: **$223,147.05**

The real property described being set forth as follows:
**SEE ATTACHED LEGAL DESCRIPTION AS EXHIBIT "A"**

Borough: **Manhattan** County: **New York** District: **N/A** Section: **N/A** Block: **1902** Lot: **137**
APN#: **1902-0137**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

LOAN MODIFICATION AGREEMENT—Single Family—FHA UNIFORM INSTRUMENT    Form 3179  1/01 (rev. 10/10)  *(page 3 of 10)*

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of July 1, 2019, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $933,579.20, consisting of the unpaid amount(s) loaned to Client by Lender plus any interest and other amounts capitalized.

2. $23,000.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $910,579.20. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of July 1, 2019 and the first new monthly payment on the Interest Bearing Principal Balance will be due on August 1, 2019. The new Maturity Date will be December 1, 2035. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 5 | 2.000% | July 1, 2019 | $5,426.31 | $941.84 May adjust periodically | $6,368.15 May adjust periodically | August 1, 2019 | 60 |
| 1 | 3.000% | July 1, 2024 | $5,731.27 | May adjust periodically | May adjust periodically | August 1, 2024 | 12 |
| 10 | 3.875% | July 1, 2025 | $5,983.71 | May adjust periodically | May adjust periodically | August 1, 2025 | 125 |

3. I agree to pay in full the Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Principal Balance, or (iii) the new Maturity Date.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Client is not a natural person and a beneficial interest in Client is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. If Lender exercises this option, Lender shall give Client notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Client must pay all sums secured by the Security Instrument. If Client fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Client.

5. By this paragraph, Lender is notifying Client that any prior waiver by Lender of Client's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Client has been advised of the amount needed to fully fund the Escrow Items.

6. Client will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Client shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Client shall pay Lender the Funds for Escrow Items unless Lender waives Client's obligation to pay the Funds for any or all Escrow Items. Lender may waive Client's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Client shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Client's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Client is obligated to pay Escrow Items directly, pursuant to a waiver, and Client fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Client shall then be obligated to repay to Lender any such amount.

Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Client shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Client for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Client interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Client any interest or earnings on the Funds. Lender and Client can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Client, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Client for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Client as required by RESPA, and Client shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Client as required by RESPA, and Client shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Client any Funds held by Lender.

7. Client also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Client's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Client is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:
    (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Client waives any Timely Payment Rewards rate reduction to which Client may have otherwise been entitled; and
    (b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

8. Client understands and agrees that:
    (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
    (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Client's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
    (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

LOAN MODIFICATION AGREEMENT—Single Family—FHA UNIFORM INSTRUMENT         Form 3179  1/01 (rev. 10/10)   (page 5 of 10)

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Client and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Client agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Client.

(f) That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

(g) That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

(h) That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

(i) Notwithstanding anything to the contrary contained in this Agreement, Client and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Client prior to the execution of this Agreement and that Lender may not pursue Client for personal liability. However, Client acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Client's default there under. Nothing in this Agreement shall be construed to be an attempt to collect against Client personally or an attempt to revive personal liability.

(j) If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(k) This section applies only if applicable; Client hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Client hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Client authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Client shall receive the Rents until (i) Lender has given Client notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Client: (i) all Rents received by Client shall be held by Client as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Client agrees that each tenant of the Property shall pay all

Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Client to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Client represents and warrants that Client has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Client. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(l)     This section applies only if applicable; I was discharged in a Chapter 7 bankruptcy   proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

_____  _____
EDDIE A CORYAT                          [Client]

Date: _____

_____
-Witness-
KUMUDINI USWATTE-ARATCHI
Printed name of Witness

_____
-Witness-
Peachreann Coryat
Printed name of Witness

LOAN MODIFICATION AGREEMENT—Single Family—FHA UNIFORM INSTRUMENT     Form 3179  1/01 (rev. 10/10)  (page 7 of 10)

_____ [Space Below This Line For Acknowledgment] _____

State of __New York__

County of __Queens__

On __August 14, 2019__ before me, __Cynthia Narea__
    Date Notarized                                   Printed name of Notary

Personally appeared and signed the above-referenced Instrument in my presence

**EDDIE A CORYAT** personally known to me ____ - OR - ____ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CYNTHIA NAREA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01NA6359895
Qualified in Queens County
Commission Expires June 12, 2021

_____
Notary Public    (Signature Required)

__6/12/2021__
My Commission Expires

**LOAN MODIFICATION AGREEMENT—Single Family—FHA UNIFORM INSTRUMENT**      Form 3179  1/01 (rev. 10/10)  *(page 8 of 10)*

Lender's Acknowledgment

**HSBC BANK USA, NATIONAL ASSOCIATION
AS TRUSTEE FOR OPTEUM MORTGAGE
ACCEPTANCE CORPORATION, ASSET-BACKED
PASS-THROUGH CERTIFICATES, SERIES 2005-5**
*Lender*

By: _____
    *[Vice President]*

Date: _____

_____ -Witness-

_____
Printed name of Witness

_____ -Witness-

_____
Printed name of Witness

_____ [Space Below This Line For Lender Acknowledgement] _____

State of _____ FLORIDA _____

County of _____ DUVAL _____

I, _____, a Notary Public for said County and State, do hereby certify that
    *[Notary Name]*
_____, _____ VICE PRESIDENT _____, personally appeared before me this day and
    *[Authorized Signer]*           *[Title of Signing Officer]*

personally known to me _X_ OR- __ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the individual/person(s), or the entity upon behalf of which the individual/person(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the *City of* Jacksonville, *County of* Duval, *State of* Florida, that the foregoing paragraph is true and correct.

WITNESS my hand and official stamp or seal, this _____ day of _____, 2019

_____
Notary Public    (Signature Required)

_____
My Commission Expires

LOAN MODIFICATION AGREEMENT—Single Family—FHA UNIFORM INSTRUMENT        Form 3179  1/01 (rev. 10/10)  *(page 9 of 10)*

# Exhibit "A"

Real property in the Borough of **MANHATTAN**, City and County of **NEW YORK**, State of **New York**, described as follows:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF 118TH STREET, DISTANT WESTERLY 92 FEET FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF 118TH STREET WITH THE WESTERLY SIDE OF LENOX AVENUE;

AND RUNNING THENCE SOUTHERLY AND PARALLEL WITH LENOX AVENUE AND PART OF THE DISTANCE THROUGH A PARTY WALL, 100 FEET 11 INCHES;

THENCE WESTERLY AND PARALLEL WITH 118TH STREET, 17 FEET;

THENCE NORTHERLY AND PARALLEL WITH LENOX AVENUE THROUGH A PARTY WALL, 100 FEET 11 INCHES TO THE SOUTHERLY SIDE OF 118TH STREET;

THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF 118TH STREET, 17 FEET TO THE POINT OR PLACE OF BEGINNING.

Premises described in Schedule "A" are known as:
Address: 104 W 118TH STREET
County: NEW YORK
District: N/A
Section: N/A
Block: 1902
Lot: 137

APN #: **1902-0137**